# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

ABBEY RESORT CONDOMINIUM ASSOCIATION, INC.

    Plaintiff,                                Case No.: 18-CV-552

v.

TRAVELERS INDEMNITY COMPANY

    Defendant.

## COMPLAINT

Abbey Resort Condominium Association, Inc., by its counsel, Gass Weber Mullins LLC, as and for its complaint against Travelers Indemnity Company, alleges and states as follows:

### Nature of Claim

1. The Abbey Resort Condominium Association, Inc. (the "Abbey") is filing this lawsuit to obtain insurance coverage from its property insurer, Travelers Indemnity Company ("Travelers"), for damage caused by a historic storm event on July 11 and 12, 2017. Specifically, heavy rain and winds caused extensive damage to buildings at the Abbey. The Abbey incurred, and will continue to incur, substantial monetary losses as a result of the storm, including roof repairs, room damage, lost revenue, and other damages.

2. When the Abbey sought assistance from Travelers (who received in excess of $100,000 in premium for the Abbey's property insurance) for those losses, Travelers denied the claim. Travelers' denial is not only contrary to the terms of its insurance policy, but its handling of the Abbey's claim was made in bad faith. The Abbey seeks damages for Travelers' breach of its insurance contract with the Abbey and for Travelers' incomplete, irrational, and baseless denial of the Abbey's claim.

**The Parties and Diversity Jurisdiction**

3. The Abbey is the owner of the Abbey Resort Spa, an iconic resort containing more than 300 guest rooms, two restaurants, a 35,000-foot spa, and direct access to Geneva Lake. The Abbey is a Wisconsin corporation with its principal place of business in Fontana, Wisconsin. The Abbey is a citizen of the State of Wisconsin for purposes of 28 U.S.C. § 1332(a)(1).

4. Travelers is an insurance company incorporated under the laws of the State of Connecticut and has its principal place of business located in the State of Connecticut. Travelers is a citizen of the State of Connecticut for purposes of 28 U.S.C § 1332(a)(1).

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. For example, the repairs to the Abbey's roof, which should be paid by Travelers, will exceed $1.5 million.

6. Pursuant to Section 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction of this civil action because the Abbey and Travelers are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Pursuant to Section 28 U.S.C. § 1391(b)(2), this district is a proper venue for this civil action because the Abbey is located in this district and the events and circumstances giving rise to this suit occurred largely in this district.

**Factual Background**

8. The Abbey Resort Spa consists of several structures located throughout its 90-acre grounds. These structures include seven, two-story buildings containing more than 300 guest rooms and a "commercial building" with restaurants and meeting rooms. An overhead map of the relevant area, along with building numbers, is set forth below:



9. Starting on July 11 and continuing through July 12, 2017, a series of severe weather cells traveled through Southeast Wisconsin ("July 11-12 Windstorm"). The severe weather conditions included heavy rain, strong winds and flooding. These storms were particularly devastating in Walworth County, where the Abbey is located.

10. Over approximately a 10-hour period on July 11 through July 12, the weather station closest to the Abbey measured more than 7.2 inches of rain. In addition to heavy rain, the weather station recorded winds consistently approaching 20 mph and multiple wind gusts near 40 mph.

3

11. In the aftermath of the storm, the Abbey experienced extensive water intrusion in the second-floor guest rooms in Buildings 1-7. Those rooms' ceilings are immediately adjacent to the buildings' roofs.

12. Prior to the July 11-12 Windstorm, the Abbey had never experienced such widespread leaking and water damage in its second-floor guest rooms.

13. On or about October 3, 2017, the Abbey submitted a claim to Travelers for roof damage caused by the July 11-12 Windstorm.

14. On October 16, 2017, Travelers responded that it "has been unable to determine whether your claim is covered under your policy based on the information available to us at this time." Travelers stated that it was conducting research "to determine whether coverage is provided by your policy." Nevertheless, despite conducting no real investigation of the Abbey's claim, Travelers cited three exclusions to coverage in its October 16, 2017 letter.

15. On October 25 and November 2, 2017, a Travelers-retained engineer from Donan Engineering Co., Inc. ("Donan") inspected the Buildings 1-7 and the commercial building at the Abbey. The Donan inspector made only superficial observations to six of the buildings (Buildings 1, 3, 5-7 and the commercial building), and did not inspect the roofing system below the shingles at any of those six buildings.

16. The Donan inspector examined cutaways below the shingles at only two buildings – Buildings 2 and 4. On Building 2, the Donan inspector examined an approximately three foot by four foot (3' x 4') area of plywood below the shingles. Below the plywood, he also examined a very small area (no larger than 12" by 12") of Tectum – a structural roof panel that also served as the ceiling for the second-floor rooms. On Building 4, the Donan inspector examined a small area of plywood below the shingles and two sections of Tectum below the plywood.

17. Confronted with tens of thousands of square feet of roof, the Donan inspector actually examined less than 50 square feet of roof below the shingles. The Donan inspector had no way of determining the extent or duration of water intrusion at Buildings 1, 3, 5, 6, 7, or the

4

commercial building. He also had no way of determining the extent or duration of water intrusion at those portions of the roof at Building 2 and 4 that were not exposed during Donan's inspection.

18. The Donan inspector claimed there were pre-existing structural problems with the roofs on Buildings 1-7 that allowed the rain water to infiltrate the roof system. Specifically, the Donan inspector reported "[t]he water intrusion referenced on [July 11-12, 2017] occurred through the already compromised roofing system."

19. Upon information and belief, Travelers received Donan's inspection reports in mid- and late-November, 2017. Travelers failed to timely apply the findings from the Donan reports to the terms of its policy and update its coverage response to the Abbey.

20. On December 28, 2017, Travelers claim representative Ryan Conklin informed the Abbey that Travelers would review Donan's supplemental report dated December 26, 2017 and "send a formal response in regards to a claim decision."

21. For the first two-plus weeks of 2018, Travelers failed to send its promised response. Thus, as of January 19, 2018, Travelers still had not provided any explanation as to whether it was covering the Abbey's claim or, if not, why it would not be covering the Abbey's claim.

22. In the absence of any coverage explanation from Travelers, on January 19, 2018, the Abbey's counsel sent a letter to Travelers setting forth the Abbey's coverage position. The letter requested Travelers to provide written confirmation of certain coverage determinations within 10 days – i.e., on or before January 29, 2018. A copy of this letter is attached as **Exhibit A**.

23. The January 29 deadline came and went without any response from Travelers, other than it was working on a letter. On February 2, 2018, the Abbey's counsel emailed Travelers about the status of its response. Travelers failed to respond to that simple email inquiry.

24. On February 8, 2018, the Abbey's counsel sent a follow-up letter inquiring about Travelers' response to the Abbey's coverage analysis. A copy of this letter is attached as **Exhibit B.**

25. Finally, on February 9, 2018, Travelers provided a written response to the Abbey's roof claim. The letter contains several misleading and/or false statements. For example:

- On page 2, the letter states that "[w]hen the roofs were opened up, several TECTUM panels were degrading from long term water exposure." In truth, however, the only degrading panel was the tiny sample uncovered on Building 2. On the only other exposed sample of Tectum (Building 4), Donan reported the "Tectum is firm throughout the panel." There were not several degrading Tectum panels.
- On page 2, the letter states there were multiple "consumer reviews stat[ing] that there was water damage present in the guest rooms." The December 26, 2017 Donan report refers to a single review in a single room.

26. In its February 9 letter, Travelers denied the Abbey's claim for roof damage. A copy of this letter is attached as **Exhibit C**. The entire Travelers' coverage analysis is contained in one paragraph:

> We must advise that, based upon the investigation, the policy does not provide coverage to your clients for this matter based upon one or more of the exclusions or limitations contained therein. For example, since the policy does not pay for loss or damage caused by the continuous or repeated seepage, leakage or flow of water that occurs over a period of 14 days or more; or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more, there is no coverage for the water damage that is being claimed here – including the leaking that is being presented as beginning on July 12, 2017 and continuing through the inspections of November 2, 2017 and as noted in your January 23, 2018 e-mail continuing still through January 19, 2018. The policy does not pay for loss or damage caused by faulty or inadequate design, workmanship, materials used in construction, or maintenance, which includes the deflection of the roofing structure over time as well as the lack of proper insulation on the entire roofing system. The policy also does not pay for loss or damage caused by wear and tear, rust, corrosion, mechanical breakdown, or settling, shrinking, bulging or expansion, which includes the deflecting roofing supports and rotting plywood and TECTUM panels on the roofing system.

27. On February 26, 2018, the Abbey's counsel wrote a letter responding to Travelers' deficient analysis. A copy of this letter is attached as **Exhibit D**. The letter gave Travelers seven days to reconsider its coverage determination and agree to cover the Abbey's claim.

6

28. On February 28, 2018, Travelers' in-house counsel responded by stating that she would issue a response letter by March 12, 2018. Travelers' counsel requested a one-week extension, and eventually sent a responsive letter on March 19, 2018. A copy of the March 19 letter is attached as **Exhibit E**. More than six months after receiving the Abbey's claim, this was Travelers first attempt to actually analyze the relevant coverage provisions and circumstances of the Abbey's claim. Travelers continued to deny the Abbey's claim.

29. In addition to being delinquent, Travelers' March 19 letter also failed to properly analyze the Abbey's claim. It misapplied the concurrent cause doctrine, misapplied the exception to the "defective workmanship" exclusion, and offered no evidence to support the "continuous seepage" exclusion. Travelers' letter also delegated its duty to carefully investigate the Abbey's claim by making the Abbey elect whether Travelers need to further investigate this claim.

## The Travelers Policy

30. Travelers issued a property insurance policy to the Abbey for the policy period of December 1, 2016 to December 1, 2017 and numbered KTK-CMB-2F22921-7-16 (the "Policy"). The Policy is attached as **Exhibit F**.

31. The Policy is an "all-risk" policy that provides an expansive initial grant of coverage narrowed only by limitations and exclusions within the Policy.

32. The insuring agreement of the Policy requires Travelers to "pay for direct physical loss or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss. Covered Cause of Loss means risks of direct physical loss unless the loss is excluded in Section D., Exclusion; limited in Section E., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorsements."

33. Buildings 1-7 and the commercial building at the Abbey fall within the definition of "Covered Property" in the Policy.

34. The July 11-12 Windstorm event and resulting water intrusion were "Covered Causes of Loss" as defined in the Policy.

7

35. The July 11-12 Windstorm event caused direct physical loss or damage to Building 1-7 and the commercial building at the Abbey. For example, the storm event caused direct physical damage to the roofs of Building 1-7 and the commercial building, rendering those roofs unusable and prone to repeated water leaks.

36. In the event of direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss, the Policy covers, without limitation, the following categories of losses:

    a. The costs to repair, rebuild or replace the lost, damaged or destroyed property with other property of comparable size, material and quality. This may include the increased cost to repair, rebuild or construct the damaged property caused by enforcement of building, zoning, land use or any other ordinance or law;

    b. Lost business income from the time the property was damaged until the time such property was repaired; and

    c. Extra expenses to avoid or minimize the suspension of business and to continue operations.

37. The Policy contains two different sets of exclusions. The first set of exclusions (D.1.a – j) is prefaced by a provision stating that the "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Travelers has not identified any exclusions falling within this first set of exclusions that would be applicable to the Abbey's claim for roof damage.

38. The second set of exclusions (D.2 and D.3) omits the prefatory language quoted in the foregoing paragraph. This omission means those exclusions are subject to the "concurrent cause" rule, which provides that "[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured

8

risk even though the excluded risk is a contributory cause." *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 570 (1979).

39. The Policy contains a "wear and tear" exclusion in Section D.2.c. that precludes coverage for damage caused by "wear and tear or depletion" and "rust, corrosion, erosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect or any quality in the property that causes it to damage or destroy itself."

40. However, there is an exception to the "wear and tear" exclusion which nullifies the exclusion if "an excluded cause of loss that is listed in 2.c(1) through (6) above results in a 'specified cause of loss.'" "Specified cause of loss" includes "windstorm or hail." Thus, if wear and tear allowed a windstorm to damage a building, the exclusion would not apply.

41. Alternatively, even if the "wear and tear" exclusion were to apply, the concurrent cause rule described above would allow the Abbey to obtain coverage if another, covered cause contributed to the damage. Here, because the windstorm and resulting water intrusion were covered concurrent causes of the Abbey's damage, Travelers has a duty to cover any losses resulting from the July 11-12 Windstorm notwithstanding the applicability of the "wear and tear" exclusion.

42. The Policy contains an exclusion in Section D.2.l that precludes coverage for damage caused by "[c]ontinuous or repeated seepage, leakage or flow of water that occurs over a period of 14 days or more."

43. Travelers has no credible evidence to satisfy this exclusion in D.2.l.

44. Alternatively, even if the exclusion in D.2.l were to apply, the July 11-12 Windstorm and resulting water intrusion were covered concurrent causes of the Abbey's damage. Thus, under the concurrent cause rule, Travelers has a duty to cover any losses resulting from the windstorm notwithstanding the applicability of the exclusion in D.2.l.

45. The Policy contains a "defective workmanship" exclusion in Section D.3.c. that precludes coverage for damage caused by "faulty, inadequate or defective . . . design,

9

specifications, workmanship, repair, construction, renovation, remodeling, grading compaction . . . [or] maintenance."

46. However, there is an exception to the "defective workmanship" exclusion that nullifies the exclusion if the defective workmanship results in a Covered Cause of Loss. Here, the allegedly defective workmanship resulted in water intrusion to the roof system, a Covered Cause of Loss. The defective workmanship exclusion does not preclude coverage for the damage resulting from that water intrusion.

47. Alternatively, even if the "defective workmanship" exclusion were to apply, the concurrent cause rule would allow the Abbey to obtain coverage because the July 11-12 Windstorm and resulting water intrusion were covered concurrent causes of the Abbey's damage.

48. There are no exclusions in the Policy that completely preclude coverage for the Abbey's losses and damages resulting from the July 11-12 Windstorm.

49. There are no limitations in the Policy that restrict or narrow coverage for the Abbey's losses and damages resulting from the July 11-12 Windstorm.

50. The Policy covers the costs of repairing and/or replacing the damaged roof systems to Buildings 1-7 and the commercial building, including the costs of such repairs/replacement to bring the roof systems up to current code requirements.

51. The Policy covers the costs or repairing and/or replacing the Abbey's personal property damaged by the July 11-12 Windstorm.

52. The Policy covers the Abbey's lost business income, including credits or refunds to guests who experiencing leaking in their rooms while staying at the Abbey, resulting from the July 11-12 Windstorm.

53. The Policy covers the extra expenses the Abbey may incur to avoid or minimize the suspension of its business and to continue operations while dealing with the effects of the July 11-12 Windstorm.

54. The Policy covers other damages and losses that may be incurred by the Abbey that were caused by the July 11-12 Windstorm.

## Count One – Breach of Contract

55. The Abbey incorporates by reference its allegations in the foregoing paragraphs as if fully set forth herein.

56. The Policy is an enforceable contract between Travelers and the Abbey. The Abbey paid $108,098 in premium, as consideration, for Travelers' promise to provide coverage according to the terms of the Policy.

57. Travelers materially breached the terms of the Policy. Travelers has declined to pay for damages and losses incurred, and to be incurred, by the Abbey as a result of the July 11-12 Windstorm that are expressly covered by the Policy.

58. Travelers' material breach has caused damages to the Abbey. Without the bargained-for insurance coverage under the Policy, the Abbey will be forced to pay for repairs to the roof systems, as well as interest and costs to finance such repairs. The Abbey has incurred, and will continue to incur, lost revenue resulting from the July 11-12 Windstorm.

59. Travelers is legally responsible for the Abbey's damages naturally flowing from Travelers' material breach of the Policy.

## Count Two – Bad Faith

60. The Abbey incorporates by reference its allegations in the foregoing paragraphs as if fully set forth herein.

61. Travelers owed a fiduciary duty to the Abbey to exercise good faith in the investigation and handling of the Abbey's claim resulting from the July 11-12 Windstorm.

62. Travelers breached that fiduciary duty and acted in bad faith in the handling and adjustment of the Abbey's claim arising from the July 11-12 Windstorm.

63. Travelers failed to adequately investigate the Abbey's claim before making its coverage determination. Travelers did not even attempt to inspect the roof systems on Buildings

1, 3, 5, 6, 7, or the commercial building, opting instead for a superficial inspection of the shingles and building structure. Travelers did examine small portions of the plywood and Tectum sublayers on Buildings 2 and 4, but focused only on one area of the roofs.

64. Travelers made a sweeping coverage determination affecting eight distinct structures based on the examination of a small sample of only two roofs. This is not an adequate investigation.

65. Travelers also lacked any reasonable basis for denying the Abbey's claim for roof damage. In its January 19, 2017 correspondence, the Abbey provided detailed explanations and case law in support of its coverage analysis. In its response, Travelers wholly ignored the exceptions to the "wear and tear" and "defective workmanship" exclusions, as well as the well-settled concurrent loss rule. Travelers responded to several pages of the Abbey's analysis with a single, conclusory paragraph that essentially repeated its exclusions with no real analysis.

66. Travelers has violated Wisconsin Administrative Code Provision Ins. 6.11(3)(a)5 and 6.11(3)(a)7 and engaged in unfair claim settlement practices by failing to "promptly provide a reasonable explanation of the basis in the policy contract or applicable law for denial of a claim" and failing to "affirm or deny coverage of claims within a reasonable time after proof of loss has been completed."

67. Travelers' acts and omissions in relation to the Abbey's claim have been done with knowledge, or in reckless disregard, of the lack of a reasonable basis for denying the claim. Travelers has neglected to take honest, intelligent action or consideration based upon knowledge of the facts and circumstances surrounding the Abbey's claim.

68. Travelers' bad faith has caused the Abbey to incur, and continue to incur, substantial damages. These damages include the loss of benefits due under the Policy, interest and costs to procure financing for repairs not paid by Travelers, attorneys' fees in relation to this action, and other compensatory damages.

69. Travelers' conduct has been malicious and in an intentional disregard of the Abbey's rights. The Abbey is entitled to punitive damages against Travelers pursuant to Section 895.043, Wis. Stat.

### Count Three – Declaratory Judgment

70. The Abbey incorporates by reference its allegations in the foregoing paragraphs as if fully set forth herein.

71. There is currently an actual, justiciable controversy between Travelers and the Abbey concerning insurance coverage under the Policy for losses and damages resulting from the July 11-12 Windstorm. The Abbey has communicated to Travelers its position that the Policy covers damage to the roof systems on Buildings 1-7 and the commercial building, among other things. Travelers has rejected that position and maintains there is no coverage for such damage.

72. To resolve their ongoing controversy, the Court should declare the Abbey's rights under the Policy pursuant to 28 U.S.C. § 2201. Specifically, the Court should enter a judgment making the following declarations:

    a. The July 11-12 Windstorm – including all resulting water leaks and intrusion – was a Covered Cause of Loss that caused direct physical loss or damage to the roof systems at the Abbey.

    b. None of the exclusions or limitations in the Policy bar or restrict coverage for damage resulting from the July 11-12 Windstorm.

    c. Travelers is obligated to pay for (i) the costs to repair, rebuild, or replace the damaged roof systems with property of comparable size and quality, including improvements needed to meet current ordinances or law; (ii) lost business income from the July 11-12 Windstorm until the repairs are complete; (iii) extra expenses to avoid or minimize the suspension of the Abbey's business and to continue operations; (iv) other losses or damages to property resulting from the July 11-12 Windstorm.

WHEREFORE, based on the foregoing allegations, the Abbey demands that a judgment be entered in its favor and against Travelers awarding the following relief:

    A. Compensatory damages for Travelers' breach of contract and its bad faith conduct;

    B. Punitive damages for Travelers' intentional disregard of the Abbey's rights;

13

C. Actual attorneys' fees in relation to the Abbey's pursuit of coverage from Travelers, including fees incurred in this action;

D. A declaration of the Abbey's rights under the Policy in accordance with Paragraph 72, above;

E. Costs, interest, and other amounts allowed by law.

## JURY DEMAND

The Abbey hereby demands a jury to resolve all claims and issues that are triable to a jury.

Dated this 9th day of April, 2018.

/s/ David J. Turek
David J. Turek, SBN 1035356
Kate H. Campbell (admission pending)
Gass Weber Mullins LLC
241 N. Broadway, Suite 300
Milwaukee, Wisconsin 53202
Tel: 414-224-3445 Fax: 414-224-6116
turek@gwmlaw.com
campbell@gwmlaw.com

**Counsel for Abbey Resort Condominium Association, Inc.**